UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL MAROM,

                Plaintiff,

       -against-

TOWN OF GREENBURGH;
PAUL FEINER,

              Defendants.
-------------------------------------------------------------X

**OPINION & ORDER**

18 Civ. 7637 (JCM)

Plaintiff *pro se* Michael Marom ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 alleging that Defendants the Town of Greenburgh ("Town") and Paul Feiner (collectively "Defendants"): (1) discriminatorily enforced the Town's building code against his property, (Docket No. 54 ¶¶ 41-56); (2) arbitrarily refused to extend a building permit, (*id.* ¶¶ 57-59, 82-99); (3) defamed him, (*id.* ¶¶ 24-38); (4) committed tort by conversion, (*id.* ¶¶ 60-65); (5) violated the "*ex parte* communications rule," (*id.* ¶¶ 66-77); and (6) breached a contract, (*id.* ¶¶ 78-81). Plaintiff also seeks injunctive relief. (*Id.* ¶¶ 100–127). On March 1, 2019, Defendants moved to dismiss the Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 61 and 62). Plaintiff filed Opposition to Defendants' Motion to Dismiss on March 29, 2019, (Docket No. 65),[1] and Defendants filed a Reply Memorandum of Law on April 18, 2019, (Docket No. 68).

For the following reasons, Defendants' Motion to Dismiss is granted in its entirety, and Plaintiff's SAC is dismissed.

---

[1] *See James v. Correct Care Solutions*, No. 13-cv-0019 (NSR), 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013) ("because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint.") (internal citations and quotations omitted).

## I. BACKGROUND

### A. Factual Allegations

For purposes of resolving the instant motion, the Court accepts as true the facts as stated in Plaintiff's SAC.[2]

The facts that give rise to the instant lawsuit stem from a dispute between Plaintiff and the Gordons, Plaintiff's former[3] next-door neighbors. (Docket No. 54 ¶¶ 7-8). Plaintiff, a self-described "professional builder," purchased a vacant lot adjacent to the Gordon's home with the intention of constructing a "dream home for his family." (*Id.* ¶ 16). Prior to purchasing the property, a driveway – which bisected Plaintiff's lot – had been constructed to allow the Gordons access to the street. (*Id.* ¶ 8). After commencing construction on his home, Plaintiff claims that the Gordons initiated a legal proceeding seeking to claim adverse possession over the driveway. (*Id.*). This litigation concluded with what Plaintiff describes as a "so ordered" stipulation, but the parties' contentious relationship continued. (*Id.*). Plaintiff maintains that the Gordons "violated the stipulation by not constructing a retaining wall," which he claims prevented him from obtaining a Certificate of Completion ("C.O.") for his home. (*Id.* ¶ 10).[4] Plaintiff contends that without the C.O. there was "no economic sense to continue construction" on his home. (*Id.*).[5]

---

[2] *See Montgomery v. Holland*, 408 F. Supp. 3d 353, 361 (S.D.N.Y. Sept. 30, 2019) ("In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor") (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)).

[3] Plaintiff now resides in North Carolina. (Docket No. 54 at 2).

[4] Plaintiff also alleges that on March 17, 2015, "the Supreme Court awarded…the Gordons [sic] an exclusive easement on a portion of the [Plaintiff's] driveway which restricted [P]laintiff from any access to the driveway" meaning that he would need to "build the retaining wall by himself as the last resort." (Docket No. 54 ¶ 9).

[5] Plaintiff claims that his home is 2/3 completed. (Docket No. 54 ¶ 16).

Plaintiff alleges that he received a telephone call on November 26, 2016 from Timothy Lewis, the Town Attorney for the Town of Greenburgh, who informed him that the Gordons had "enlisted the political power of the Town's Supervisor, Paul Finer [sic]" to initiate proceedings to demolish Plaintiff's home because it was an "eye sour [sic]." (Docket No. 54 ¶ 11). Not long after this phone call, Robert Dam, the Town of Greenburgh Building Inspector, (hereinafter "Building Inspector Dam"), issued over half a dozen summonses against Plaintiff's property for violations concerning, among other things, "debris" on the property. (*Id.* ¶¶ 12, 17, 63). Plaintiff alleges upon information and belief that Defendant Feiner directed these summonses to be issued in an effort to demolish Plaintiff's home. (*Id.* ¶ 12). Plaintiff claims that two other developers on the same street were not issued summonses, despite also having building debris on their properties. (*Id.* ¶ 43). In addition, the Gordons were not issued any summonses despite having "full-size[d] cinder blocks piled" on their property. (*Id.* ¶ 44).

On April 18, 2017, after the summonses had been issued, Plaintiff contends that the Gordons appeared at a Greenburgh Town Board meeting where Defendant Feiner was present, and made the following false and defamatory statements about Plaintiff: (1) "he has threatened to kill me;" (2) "[h]e's presently before Judge Grafley in a criminal matter;" (3) "he attacked my wife;" (4) "[he] also attacked a neighbor across the street;" (5) "he has $121,000 judgment from worker's comp [sic];" (6) "he didn't have worker's comp [sic] insurance;" (7) "he is in violation of his set back;" (8) "they're afraid of falling into a 40 x 25-foot ditch on the driveway that this man dug;" (9) "he is vicious manipulative [inaudible];" (10) "there is garbage spewed all over the property;" (11) "there are animals living in it;" (12) "there are birds flying in through the eves;" (13) "there's chipmunks breeding in it;" (14) "there are mice running in and out;" (15) "there is [a] smell that comes out of the house as well;" and (16) "he's got retaining walls

between 8 and 14 feet all around the house." (*Id.* ¶¶ 12-13, 25, 28). The Town subsequently published a recording of the April 18, 2017 Greenburgh Town Board meeting ("April 18, 2017 Town Board Meeting") on its website, which included the alleged defamatory statements. (*Id.* ¶¶ 13-14). Plaintiff also claims that Defendant Feiner referred to Plaintiff's house as a "big eyesore," discussed "the strategy to be used…[to] demolish[]" Plaintiff's home, and questioned how best to expedite a trial to adjudicate the summonses issued for Plaintiff's property violations during the April 18, 2017 Town Board Meeting. (*Id.* ¶¶ 12-14).

On or about August 22, 2017, Plaintiff reached an agreement with the Town to remedy the summonses that had been issued by Building Inspector Dam, and this agreement was memorialized in a "stipulation." (Docket No. 54 ¶¶ 18, 67). Plaintiff maintains that he complied with the stipulation, but the Town disagreed, and brought the dispute before Justice Dolores Brathwaite of the Town of Greenburgh Town Court. (*Id.* ¶¶ 18-19).[6] On or about October 4, 2017, Plaintiff and the Town Attorney had a conference before Justice Brathwaite to discuss the status of the stipulation. (*Id.* ¶ 71). Following the conference, Justice Brathwaite concluded that Plaintiff had not complied with the stipulation, and ordered a trial to adjudicate the summonses issued for Plaintiff's property violations. (*Id.* ¶¶ 19-20, 76). On October 24, 2017, Plaintiff filed a motion seeking to dismiss the summonses and for Justice Brathwaite to recuse herself. (Docket No. 62-2).[7] Justice Brathwaite held a bench trial on November 6, 2017, January 10, 2018, March

---

[6] Plaintiff claims that despite his efforts to comply with the stipulation, which included removing debris from his property, the Town sought to undermine these efforts by photographing excess gravel that remained on his property, and providing the pictures *ex parte* to Justice Brathwaite. (*Id.* ¶¶ 49-50, 73-77, 79).

[7] The Court may take judicial notice of this document to establish "the fact of such litigation and related filings," *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), and because Plaintiff references this motion in the SAC, *see Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 345 (S.D.N.Y. 2010) (the court is permitted to consider "the contents of documents that the Plaintiff[] either possessed or knew about that are integral to [his] claims.").

12, 2018, and March 23, 2018. (Docket No. 64 at 2-3).[8]  On March 8, 2019, Justice Brathwaite

issued a decision, finding Plaintiff guilty of violating: (1) Section 301.3 of the International

Property Maintenance Code ("IPMC"); (2) Section 285-36F of the Town of Greenburgh Zoning

Regulation; (3) Section 410-4A of the Town Ordinance; and (4) Section 285-47A of the Zoning

Regulations. (*Id.* at 10).

## B. Procedural History

On January 24, 2018, Plaintiff commenced this action in the Eastern District of North

Carolina against Defendants Feiner and the Town of Greenburgh. (Docket No. 1).  On February

20, 2018, the Defendants moved to dismiss the complaint on the ground that the North Carolina

District Court lacked personal jurisdiction over the Defendants and that venue was improper.

(Docket No. 10).  On July 16, 2018, the Honorable Louse W. Flanagan of the Eastern District of

North Carolina granted Defendants' motion to dismiss for lack of personal jurisdiction and

declined to rule on the argument concerning venue. (Docket No. 16).

On July 24, 2018, Plaintiff moved to transfer venue to the Southern District of New York.

(Docket No. 20).  On August 20, 2018, Judge Flanagan granted Plaintiff's motion, and ordered

the transfer of the case to the Southern District of New York. (Docket No. 25).  On September

11, 2018, Plaintiff filed an Amended Complaint, again naming Feiner and the Town of

Greenburgh as defendants, but also adding Mark Gordon and Audrey Pierot as Defendants.

(Docket No. 33).  On December 14, 2018, Plaintiff filed the SAC, dropping Pierot and Gordon as

defendants. (Docket No. 54).  On the same day, Plaintiff also filed an Order to Show Cause,

requesting that the Court grant the injunctive relief requested in the SAC, (Docket No. 54 ¶¶

---

[8] The Court may take judicial notice of this document since it was a decision in Plaintiff's New York State Court case. *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (taking judicial notice of "all documents in the public record, including the decisions of the [Village Zoning Board of Appeals], the decisions of the Supreme Court in the Article 78 proceedings, and the provisions of the Village zoning code…").

100-127), and granting him leave to file a late notice of claim. (Docket No. 53). On December 21, 2018, the Court denied Plaintiff's request for injunctive relief and found that the Court lacked authority to grant leave to serve a late notice of claim. (Docket No. 57).

On March 1, 2019, Defendants moved to dismiss the SAC. (Docket Nos. 61-63). On March 11, 2019, Defendants filed a letter informing the Court that Justice Brathwaite issued a decision after trial regarding Plaintiff's property violations. (Docket No. 64). Plaintiff filed opposition to Defendants' motion on March 29, 2019, (Docket No. 65), and Defendants filed a Reply Memorandum of Law on April 18, 2019, (Docket No. 68). On February 14, 2020, Defendants submitted the appellate briefs filed in Plaintiff's appeal from Justice Brathwaite's decision after trial. (Docket No. 69).

## II. MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss must accept all of the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss . . . we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.") (citations and internal quotation marks omitted)). The facts alleged must be more than legal conclusions. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555

("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration, citation and internal quotation marks omitted)).

The court must also determine whether the factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely 'alleged' but not 'show[n] that the pleader is entitled to relief.'" *9 Recordings Ltd. v. Sony Music Entm't*, 165 F. Supp. 3d 156, 160 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks omitted)). If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

*Pro se* complaints should be liberally construed and "held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *James v. Correct Care Solutions*, No. 13-cv-0019 (NSR), 2013 WL 5730176, at *2 (S.D.N.Y. Oct. 21, 2013) (citation and internal quotation marks omitted);[9] *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (noting that *pro se* complaints require "special

---

[9] In accordance with *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and any others cited herein, only available by electronic database, accompany this Opinion and Order and shall be simultaneously delivered to Plaintiff, who is proceeding *pro se*.

solitude" and the court should interpret the complaint to raise the strongest claims). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *James*, 2013 WL 5730176, at \*2 (citations and internal quotation marks omitted).

## III. DISCUSSION

Plaintiff brings nine separate claims for relief in the SAC and also seeks two forms of injunctive relief. (Docket No. 54). Defendants move to dismiss all claims.[10] (Docket Nos. 62, 68).

## A. Defamation Claim

Plaintiff's first and second claims for relief are that the Defendants published defamatory statements about him that were made during the April 18, 2017 Town Board Meeting. (Docket No. 54 ¶¶ 13, 37-38). Defendants argue that Plaintiff's defamation claims should be dismissed because he failed to file a timely notice of claim. (Docket No. 62 at 7-8). Plaintiff maintains that he was not required to file a notice of claim, citing to the Town of Greenburgh Code in support of this assertion. (Docket No. 65 at 7).

New York General Municipal Law §50-i(1) provides:

> No action…shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury…alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof…unless (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this article…

---

[10] Plaintiff's argument that Defendants' motion to dismiss should be denied as untimely is unavailing. (Docket No. 65 at 1-2). Pursuant to Fed. R. Civ. P. 12(b), Defendants are permitted to file a motion to dismiss in lieu of an answer, and did so in accordance with the briefing schedule set forth by the Court. (Docket Nos. 60-61).

Pursuant to General Municipal Law §50-e, a plaintiff must serve a notice of claim within 90 days after the claim arises. *See* Gen. Mun. Law §50-e(1)(a). As a general rule, notice of claim requirements "apply equally to state tort claims brought as pendent claims in a federal civil rights action." *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). "A plaintiff's failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in a dismissal of his claims." *Id*.

Plaintiff alleges that the defamatory statements were made during the April 18, 2017 Town Board Meeting, and were subsequently published by the Defendant Town of Greenburgh ("Town Defendant") on that same date. (Docket No. 54 ¶¶ 25-34). Plaintiff did not serve a notice of claim until December 4, 2017, nearly eight months after publication of the alleged defamatory statements. (Docket No. 62-3). In opposition, Plaintiff concedes that his notice of claim was untimely, and instead argues that §590-2 of the Town of Greenburgh Code does not require a notice of claim for defamation claims. (Docket No. 65 at 6-8).

Plaintiff's argument is without merit. Contrary to Plaintiff's assertion, defamation claims are not exempt from the notice of claim requirement, and courts routinely dismiss claims where plaintiff failed to comply with this condition precedent. *See, e.g.*, *Walker v. Vill. of Freeport*, 15-CV-4646 (JFB)(SIL), 2016 WL 4133137, at *10 (E.D.N.Y. June 13, 2016) (dismissing a defamation claim where plaintiff failed to file a notice of claim), *report and recommendation adopted*, 2016 WL 4132252 (E.D.N.Y. Aug. 2, 2016); *Gaston v. N.Y.C. Dep't of Health Office of Chief Med. Examiner*, 432 F. Supp. 2d 321, 326–27 (S.D.N.Y. 2006) (dismissing libel and defamation claims where plaintiff conceded that he failed to file a notice of claim); *Belgrave v. City of New York*, No. 95-CV-1507 (JG), 1999 WL 692034, at *46 (E.D.N.Y. Aug. 31, 1999) (dismissing defamation claim because plaintiff filed a late notice of claim); *accord Hone v. City*

*of Oneonta*, 157 A.D.3d 1030, 1032 (3d Dep't 2018) (dismissing defamation claim where plaintiff served an untimely notice of claim, and noting that a cause of action for defamation accrues "when the allegedly defamatory statements are made").

The case cited by Plaintiff, *Sobotka v. Zimmerman*, 48 A.D.3d 1260 (4th Dep't 2008), is inapposite. (Docket No. 65 at 7). It neither stands for the proposition that defamation claims are exempt from the notice of claim requirement, nor does it lend any support to Plaintiff's argument that the Greenburgh Town Code somehow preempts the New York General Municipal Law. *See Sobotka*, 48 A.D.3d 1260.[11] Furthermore, this Court previously instructed Plaintiff to seek leave to serve a late notice of claim in New York State court, not federal court. (Docket No. 57 at 2). However, Plaintiff's opposition is silent with respect to whether he has done so. (Docket No. 65, *generally*).

Even if Plaintiff had timely served a notice of claim, his defamation claim would fail because Defendants' actions are covered by the fair and true report privilege. "A statement is not defamatory if it is privileged or authorized." *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019) (quoting *ABKCO Music, Inc. v. Sagan*, 15-CV-4025 (ER), 2016 WL 2642224, at *3 (S.D.N.Y. May 6, 2016)). N.Y. Civ. Rights Law § 74 provides that a privilege exists "for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law § 74. "New York courts have broadly construed the meaning of an official proceeding as used in Section 74." *Test Masters Ed. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009) (citations omitted).

---

[11] Further, Plaintiff's argument that he does not need to file a notice of claim because he brought this lawsuit pursuant to §1983 misses the mark. (Docket No. 65 at 6-7). While Plaintiff is not required to file a notice of claim as a condition precedent for his federal claims, it is a condition precedent to his state defamation claim. *See Kearse v. Aini*, Case # 19-CV-6429-FPG, 2019 WL 3343409, at *4 n.2 (W.D.N.Y. July 25, 2019) (noting that while "New York's notice of claim requirement is inapplicable to Plaintiff's §1983 claims…[it] is a condition precedent to any state-law claim that [he] may intend to bring.").

"A statement is deemed a 'fair and true report' if it is 'substantially accurate.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (citations and quotations omitted). Further, "[t]he fair and true report privilege has been described as an absolute privilege…that is not defeated by the presence of malice or bad faith." *Id.* (citations and quotations omitted).

Plaintiff claims that a recording of the April 18, 2017 Town Board Meeting was published by Defendants on the Town of Greenburgh's website, and does not allege that the recording was altered or changed by Defendants prior to its publication. (Docket No. 54 ¶¶ 13-14, 25). Thus, because a Town Board meeting constitutes an "official proceeding,"[12] and Plaintiff merely accuses the Defendants of publishing a complete recording of that meeting, their actions are privileged. *See Biro*, 883 F. Supp. 2d 441.

Accordingly, Plaintiff's first and second claims are dismissed.

## B. Equal Protection Claims

Plaintiff's third claim seeks relief for the Town Defendant's alleged discriminatory enforcement of the building code against his property in violation of his equal protection rights.[13] (Docket No. 54 ¶¶ 41-56, 87-99). Defendants argue that Plaintiff's claims are subject to dismissal because he did not identify comparators that are "similarly situated in all material respects" to Plaintiff and that the issuance of summonses for building violations is a discretionary act that cannot form the basis of an equal protection claim. (Docket No. 62 at 9-11). Defendants also argue that Plaintiff fails to establish municipal liability. (*Id.*).

---

[12] *See Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (finding that a public town meeting constituted an "official proceeding").

[13] Although Plaintiff's ninth claim for relief is entitled "Equal Protection," (Docket No. 54 at 19), it alleges violations of Plaintiff's due process rights arising out of his alleged property interest in the Town's enforcement of the building code, and thus will be addressed with Plaintiff's substantive due process claim in Section III(C).

To state an equal protection claim based on the theory of selective enforcement, a plaintiff must demonstrate: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995)). Furthermore, a plaintiff cannot state a selective enforcement claim simply by alleging disparate treatment. *See id.* "Instead, he must prove that the disparate treatment was *caused by* the impermissible motivation." *Id.* (emphasis in original) (quoting *Crowley v. Courville*, 76 F.3d 47, 53 (2d Cir. 1996)). In addition "whether two comparators 'are similarly situated is [generally] a factual issue that should be submitted to the jury.'" *LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885 (KMK), 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). While "[t]here is no precise formula to determine whether an individual is similarly situated to comparators," *Hu*, 927 F.3d at 97 (internal quotations omitted), at the motion to dismiss stage, a plaintiff still must allege facts that plausibly demonstrate that he is similarly situated to the comparators. *See LTTR Home Care*, 2019 WL 4274375, at *12 (collecting cases).

A plaintiff may also state an equal protection claim pursuant to a class-of-one theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a class-of-one claim, a plaintiff must plausibly allege: that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* In addition, the degree of similarity between the plaintiff and purported comparators must be

"extremely high." *Hu*, 927 F.3d at 93 (quotations omitted). In *Hu*, the Second Circuit

emphasized the high degree of similarity that a plaintiff must plead to successfully prevail on a

class-of-one claim. Specifically, a plaintiff must show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from
> those of a comparator to a degree that would justify the differential treatment on
> the basis of a legitimate government policy; and (ii) the similarity in
> circumstances and difference in treatment are sufficient to exclude the possibility
> that the defendant acted on the basis of a mistake.

*Id.* at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)). The court in *Hu*

contrasted this more exacting standard with the lower degree required to plead a selective

enforcement claim, noting that "'the plaintiff's and comparator's circumstances must [only] bear

a reasonably close resemblance'" in a selective enforcement claim. *Id.* at 96 (quoting *Brown v.*

*Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).

Defendants argue that Plaintiff only alleges a class-of-one claim because an "out of Town

developer who is not a constituent" is not a protected class. (Docket No. 62 at 10). However,

Defendants ignore the fact that "malicious or bad faith intent to injure" constitutes an

"impermissible consideration" for the purposes of a selective enforcement claim. *Hu*, 927 F.3d at

91. Further, Plaintiff has alleged that the Town Defendant issued violations against his property

based on "impermissible considerations" that were done in bad faith and were motivated by

"animus and ill will." (Docket No. 54 ¶¶ 47-49). Thus, the Court will evaluate whether Plaintiff

has a viable equal protection claim based on both selective enforcement and class-of-one

theories.

Defendants preliminarily argue that Plaintiff's class-of-one claim must fail because the

decision to issue summonses for property violations "is an entirely discretionary act and thus

beyond the purview of an equal protection claim." (Docket No. 62 at 9-10). However, the

Second Circuit in *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 142 (2d Cir. 2010),

determined that discretionary state action may properly form the basis of a class-of-one claim. *See also Aliberti v. Town of Brookhaven*, 876 F. Supp. 2d 153, 162–63 (E.D.N.Y. 2012) ("Accordingly, in the wake of *Analytical Diagnostics*, class-of-one claims are not *ipso facto* barred simply because the government's conduct was discretionary") (collecting cases). Thus, the discretionary task of issuing building code or property violation summonses may serve as the predicate for an equal protection claim.

Plaintiff seeks to compare himself to the following individuals: (1) two building developers who were developing properties on the same street as his home who did not receive summonses "despite having cement mixers, concrete forms, piles of sand, wooden planks and other building materials on the properties developed by them," (Docket No. 54 ¶ 43); and (2) Plaintiff's neighbors, the Gordons, who had "broken and full-size[d] cinder blocks piled" on their property, but were not issued a summons, (*id.* ¶ 44). Plaintiff acknowledges that he received summonses for several violations, including one he refers to as an "[a]ccumulation of debris," which consisted of: a cement mixer, construction trailer, wooden scaffolding, Styrofoam blocks, PVC pipe, a pile of gravel, and wooden forms. (*Id.* ¶ 43). While Plaintiff acknowledges that he received summonses for other violations, he does not detail them in the SAC. (*Id.*).

Plaintiff's equal protection claim fails under either theory because "[r]egardless of which standard the Court applies – the 'extremely high degree of similarity' standard used in class-of-one cases or the less demanding standard some courts apply to selective enforcement claims – these allegations fall far short" of establishing that Plaintiff's neighbors or the two developers are proper comparators. *LTTR Home Care*, 2019 WL 4274375, at *12 (quoting *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 9 (S.D.N.Y. 2017)). With respect to the two developers, Plaintiff fails to include any allegations regarding whether the "accumulation of debris" on their

properties was similar in magnitude or scope, or whether it violated the same provision of the building code. (Docket No. 54 ¶ 43). Although Plaintiff describes the other developers as having "cement mixers, concrete forms, piles of sand, wooden planks, and other building materials," he provides no detail with respect to the stage of development of the properties,[14] the organization – or lack thereof – of the building materials on the properties, the specific building code or regulation that their conduct violated and how it was similar to Plaintiff's violations. (*Id.* ¶¶ 41-56). In addition, while Plaintiff acknowledges that he received summonses for items other than the "[a]ccumulation of debris," he did not include these other violations – for which he was found guilty after trial – in the SAC. The additional violations include: (1) leaving makeshift scaffolding on his building with signs of deterioration; (2) leaving exterior walls, eaves, gutters not completed for years that cause blighting; (3) leaving piles of gravel on the driveway causing blighting; (4) leaving exterior walls and windows unfinished; (5) having a commercial trailer and cement mixer on his property within full-view; (6) and finally that his property remained in a "state of disrepair" for over two years despite being afforded the opportunity to cure the violations. (Docket No. 64 at 6-10). These additional violations further distinguish Plaintiff from the two developers described in the SAC.

Plaintiff's claim fares no better with the Gordons as comparators. Plaintiff only alleges that the Gordons had "full-size[d] cinder blocks piled" on their property. (Docket No. 54 ¶ 44). A comparison of this one item with the host of violations for which Plaintiff was found guilty of after trial, distinguishes Plaintiff from the Gordons. (*Id.* ¶¶ 43-44). In addition, the SAC further distinguishes Plaintiff from the Gordons because Plaintiff is a building developer, but there is no

---

[14] Plaintiff asserts that his home was 2/3 completed, but acknowledges that he has ceased construction on his home. (Docket No. 54 ¶¶ 10, 16).

indication that the Gordons are developers or engaging in any construction on their property. (*Id.* ¶¶ 42, 44, 47).

Consequently, Plaintiff fails to plausibly allege that his neighbors or the two developers are proper comparators under either the selective enforcement or class-of-one theories. *See New Page at 63 Main, LLC v. Inc. Vill. of Sag Harbor*, 674 F. App'x 23, 27 (2d Cir. 2016) (summary order) (affirming dismissal of class-of-one equal protection claim where, while referring to "other restaurants with outdoor seating" whose licenses for outdoor seating were not revoked, plaintiff did not identify any comparator with "sufficient specificity to meet th[e] high standard"); *see also Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 545 (S.D.N.Y. 2014) (dismissing selective prosecution and class-of-one claims where plaintiff sought to use his neighbor as a comparator but "provide[d] no information about their properties, situations, or conduct that would support the conclusory statement that they were similarly (let alone extremely similarly) situated"); *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135–36 (E.D.N.Y. 2013) (finding plaintiff not similarly situated to other comparators in a selective enforcement claim where plaintiff was cited for maintaining a "barricade[]" deemed to be a nuisance, but the comparators were not cited for having "broken pavement, large potholes, [and] ruts and ridges"); *Toussie v. Town Bd. of East Hampton*, 874 F. Supp. 2d 135, 143 (E.D.N.Y. 2012) (finding class-of-one and selective enforcement claims deficient where the two parcels at issue were substantially different "given their markedly distinct developmental histories"); *cf. Amid v. Vill. of Old Brookville*, No. CV 11-3800, 2013 WL 527772, *6 (E.D.N.Y. Feb. 7, 2013) ("[W]here a plaintiff claims to have been treated unfairly in a zoning/building context, he must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged.").

Assuming, *arguendo*, that Plaintiff was able to establish that he was similarly situated to the developers and the Gordons, he fails to plausibly plead that the Defendants' actions were motivated by any constitutionally impermissible considerations or were arbitrary and capricious. Plaintiff claims that the Defendants acted in bad faith and with malice towards him because they sought to "demolish" his home in order to "appease their residents who possesses [sic] electoral voting power, and to punish Plaintiff for the exercise of his Constitutional rights." (Docket No. 54 ¶¶ 47, 49). The SAC is silent, however, with respect to what "Constitutional rights" Plaintiff claims he was exercising or punished for exercising. Thus, to state a selective prosecution claim, Plaintiff must establish that the summonses issued against his property were motivated by malice or an intent to injure. *See Hu*, 927 F.3d at 91. Liberally construed, the SAC alleges that the Defendants acted with malice because Defendant Feiner desired to demolish Plaintiff's property in order to "appease" the Gordons. (*Id.* ¶¶ 48-49, 50, 53).

Plaintiff, however, fails to plausibly plead any connection between the alleged desire by Defendant Feiner to demolish his property and the summonses he received. The allegations concerning Feiner's involvement in the issuance of the summonses are all pled "upon information and belief," (Docket No. 54 ¶¶ 11-12), and the SAC does not otherwise provide facts establishing Defendant Feiner's personal involvement in issuing the summonses, (*id.* ¶¶ 17). For example, although Plaintiff claims "[u]pon information and belief…the summonses were issued pursuant to a 'sweep' ordered by…Feiner," the alleged basis for this "sweep" is Feiner's characterization of Plaintiff's property as "a big eyesore" and his vocal desire to "knock down" Plaintiff's property. (*Id.* ¶¶ 12, 48-49). Plaintiff, however, does not plead facts connecting Defendant Feiner's sentiments to the issuance of summonses by Building Inspector Dam, who Plaintiff acknowledges actually issued the summonses. (*Id.* ¶ 63). Indeed, the Town of

Greenburgh Administrative Code explicitly authorizes Building Inspector Dam to issue

summonses and violation notices. *See* Greenburgh Admin. Code §§ 100-26; 650-1(A).[15]

Moreover, Plaintiff does not allege that Building Inspector Dam maintained any ill-will or malice

towards him personally, or even towards his property. (*See generally* Docket No. 54). While the

SAC is replete with allegations describing Defendant Feiner's desire to see the home

demolished, and displeasure with Plaintiff's development, (*id.* ¶¶ 12, 14, 48-50, 55), these

allegations do not mention Building Inspector Dam in this alleged "plan" to demolish the home.

Plaintiff, thus, fails to plausibly allege that the "disparate treatment was *caused by* the [alleged]

impermissible motivation." *Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL

1427206, at *7 (S.D.N.Y. Mar. 27, 2015) (emphasis in original) (quotations omitted). Even

assuming, *arguendo*, that Building Inspector Dam was on notice of the other potential violators,

and did not issue summonses, this alone would be insufficient to establish a selective prosecution

claim. *See Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 158

(S.D.N.Y. 2002) ("Failure to proceed *against others* who are comparably situated is not by itself

a basis for finding a denial of equal protection") (emphasis in original) (quotations omitted).

Additionally, even if Plaintiff pled some connection between Defendant Feiner's desire to

rid the town of what he characterized as an "eyesore" in an effort to assist Plaintiff's neighbors,

(i.e. residents of the Town of Greenburgh), (Docket No. 54 ¶¶ 11-12), this would not rise to the

level of ill-will or malice necessary for a selective enforcement claim. Favorable treatment of

Plaintiff's neighbors, "itself does not demonstrate malice against [Plaintiff], but rather merely an

intent to help [his neighbors]." *Missere v. Gross*, 826 F. Supp. 2d 542, 565 (S.D.N.Y. 2011); *see*

---

[15] The Court may take judicial notice of provisions of the Town of Greenburgh Administrative Code on a motion to dismiss. *See Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 337 n.4 (E.D.N.Y. 2010) ("Pursuant to Federal Rule of Evidence 201, the Court is permitted to take judicial notice of provisions of the Riverhead Town Code on a motion to dismiss") (collecting cases).

*also Town and Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, 17-CV-8586 (CS), 2019 WL 1368560, at *22 (S.D.N.Y. Mar. 26, 2019) (although the town attorney "favored his friend's project over [plaintiff's], [plaintiff] ha[s] pointed to no case where a public official's preference of that sort amounted to malice"); *Avraham v. Lakeshore Yacht & Country Club, Inc.*, 5:15-CV-1297, 2016 WL 6585589, at *14 (N.D.N.Y. Nov. 7, 2016) (dismissing selective enforcement and class-of-one claims where plaintiff merely alleged that the Town's enactment of a local law was arbitrarily enforced against him in an "effort to prevent him from developing his real property and to reduce the value of the property to very little worth"); *Witt*, 2015 WL 1427206, at *7 (plaintiffs' allegation that they were treated less favorably because "other homeowners were all longtime Village residents" was not sufficient to establish an impermissible consideration for a selective enforcement claim); *see also Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp. 2d 273, 283 (E.D.N.Y. 2002) (plaintiff's allegation that she was fired because of her spouse's position, while constituting "personal animus…is not the sort of personal animus proscribed by the Equal Protection Clause").

Furthermore, while the SAC may plausibly allege that Defendant Feiner had issues with the state of Plaintiff's property, it does not plausibly plead that Feiner had a personal conflict with Plaintiff, himself, as opposed to his property development, sufficient to establish malice or ill-will. "Enmity directed toward a business property use may not form the basis for a constitutional claim because equal protection rights vest in individuals rather than business activities." *Harlen Assocs.*, 273 F.3d at 503; *see also, e.g.*, *Laidlaw Energy and Envtl., Inc. v. Town of Ellicottville, N.Y.*, No. 08-CV-32-S, 2011 WL 4954881, at *11 (W.D.N.Y. Oct. 18, 2011) (no malice although the town's acts may have been "compatible with acts intended to injure [plaintiff]," because they were not coupled with allegations of personal animus and were

thus incapable of establishing selective enforcement); *Toussie v. Town Bd. of the Town of East Hampton*, No. CIVA 08-1922 DRH WDW, 2010 WL 597469, at *10 (E.D.N.Y. Feb. 17, 2010) (no malice or ill-will where plaintiff claimed that the town discriminatorily "upzoned" their property because plaintiff declined to sell to the town because: (1) there were no allegations of personal conflicts between plaintiff and the town board; (2) the upzoning was motivated by "governmental objectives;" and (3) the allegations, "at best, [were] merely consistent with [the Town's] liability [and] stop[ed] short of the line between possibility and plausibility of entitlement to relief") (quotations omitted).

In Plaintiff's class-of-one claim, Plaintiff characterizes the violations he received as "made up," arbitrary, and irrational. (Docket No. 54 ¶¶ 17, 47). However, these conclusory assertions "are to be set aside" in evaluating the plausibility of the pleading. *Toussie*, 2010 WL 597469, at *6. The SAC provides few factual allegations concerning the alleged violations by the other developers and his neighbors, and explicitly acknowledges that Plaintiff was attempting to remedy his own violations by entering into a "stipulation" to remedy the issues. (Docket No. 54 ¶¶ 18, 43-44, 51). These allegations "do not exclude the potential that there was a rational basis for the difference in treatment" with respect to Plaintiff, his neighbors, and the two developers. *Nemeth v. Vill. of Hancock*, No. 3:10-CV-1161, 2011 WL 56063, at *7 (N.D.N.Y. Jan. 7, 2011).

Given the deferential standard of review applied to the Town Defendant's actions, the lack of detail concerning the comparator's alleged violations along with Plaintiff's admission that there was some basis for the violations on his own property, (i.e. his agreement to "remove building materials from the site," Docket No. 54 ¶ 51), necessitates dismissal of his class-of-one claim. *See Toussie*, 2010 WL 597469, at *8 ( "The Town's conduct is subject only to a rational

basis review, a deferential standard, that requires the denial of an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis' for the Town's action'") (quoting *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001)); *see also Missere*, 826 F. Supp. 2d at 566 ("The Complaint contains no facts whatsoever giving details regarding the alleged instances of differential enforcement of the zoning law from which the Court could draw a plausible inference that the differential treatment was not based on 'a legitimate government policy' or that the Defendants did not 'act[] on the basis of a mistake'") (quoting *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010)).

Courts in the Second Circuit "have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality – whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments – being transformed into federal lawsuits through an overly expansive reading of the Equal Protection clause." *Ruggiero v. City of Cortland, New York*, 5:17-CV-790, 2018 WL 5983505, at \*17 (N.D.N.Y. Nov. 14, 2018) (quotations omitted). The instant lawsuit is yet another chapter in the endless litigation between these parties in both state and federal courts across multiple districts, counties, and towns. While the Court is hesitant to permit this saga to continue, given Plaintiff's *pro se* status, the Court declines to dismiss Plaintiff's equal protection claim in its entirety with prejudice. Based on the high degree of similarity required to plead a class-of-one claim, combined with the other deficiencies noted herein, the Court dismisses Plaintiff's class-of-one claim *with prejudice*. However, based on the lower degree of similarity necessary to plead a selective enforcement claim, combined with the alleged impermissible considerations set forth in the SAC, the Court dismisses Plaintiff's selective prosecution claim *without prejudice*. Although

the selective enforcement claim, as presently pled, is deficient, Plaintiff may replead this claim if he has a good-faith basis to add additional facts.[16]

## C. Substantive Due Process

Plaintiff's fourth and eighth claims for relief are premised on the Town Defendant's alleged arbitrary refusal to extend a building permit which he claims violated his substantive due process rights. (Docket No. 54 ¶¶ 57-59, 82-86).

To prevail on a claim of substantive due process, a plaintiff must demonstrate: "(1) [he] had a valid property interest…and that (2) the defendants infringed on the property right in an arbitrary or irrational manner." *49 WB, LLC v. Vill. of Haverstraw*, 511 F. App'x 33, 34 (2d Cir. 2013) (quotations and citation omitted). "In the Second Circuit, a 'legitimate claim of entitlement' exists where, under applicable state law, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, 353 F. Supp. 2d 375, 384 (E.D.N.Y. 2005) (quoting *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995)). "For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels arbitrary and outrageous." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (quotations omitted) (collecting cases).

Where an entitlement claim is premised on the revocation of a land-use regulation – as is the case here – courts look to the applicable state law provisions to determine whether the

---

[16] Defendants also move to dismiss this claim on the grounds that Plaintiff cannot state a claim for municipal liability. (Docket No. 62 at 9-10). However, because "[a] *Monell* claim cannot lie absent an underlying constitutional violation," *Witt*, 2015 WL 1427206, at *12, the Court does not need to assess the viability of any alleged *Monell* claim because Plaintiff has not established any constitutional violation. *See Bolden v. Cnty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013) (summary order). Similarly, the Court declines to address whether Defendant Feiner is entitled to absolute or qualified immunity. *See Witt*, 2015 WL 1427206, at *12 n.34.

claimed property right is "entitled to protection under the substantive due process doctrine." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (quotations and citations omitted). "In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the substantive due process clause a landowner must show a clear entitlement to that benefit." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (internal quotations and citations omitted). "A mere 'abstract need or desire' for the benefit is insufficient." *545 Halsey Lane Properties, LLC v. Town of Southampton*, 39 F. Supp. 3d 326, 339 (E.D.N.Y. 2014) (quoting *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F. 2d 911, 915 (2d Cir. 1989)). The test to determine clear entitlement "'focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision.'" *Id.* (emphasis in original) (quoting *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996)). "When the issuing authority has broad, significant discretion to deny an application based on a number of factors or criteria, '[t]he presence of that discretion precludes any legitimate claim of entitlement.'" *Spanos v. City of New York*, No. 15CV6422-LTS, 2016 WL 3448624, at *2 (S.D.N.Y. June 20, 2016) (quoting *Harlen Assocs.*, 273 F.3d at 505).

Here, Plaintiff claims that he had a "cognizable or vested interest" in the renewal, or issuance, of a building permit which expired on April 30, 2017. (Docket No. 54 ¶¶ 58, 83-84). Plaintiff explains that 30 days prior to his permit's expiration, he applied to renew it with the Town of Greenburgh Building Department, which either denied his request to renew or refused to extend his then-existing permit. (*Id.*). Plaintiff does not allege what discretion, if any, the Town of Greenburgh Building Department had in issuing or renewing permits. (*See generally id.*). Defendants contend that the Building Department has "at least *some* discretion in approving

or denying a permit," but cite to no applicable regulation or code articulating the degree of discretion. (Docket No. 62 at 13) (emphasis in original) (internal citations omitted). However, Art. VI, Section 285-44 of the Town of Greenburgh Code details the process by which building permits are issued, listing in relevant part, several items that must be included in the application, and the building inspector's role in determining whether the application includes all required "approvals" prior to issuing or denying the permit. *See* Town of Greenburgh Admin. Code § 285-43. Courts in this Circuit have found similar levels of "discretion sufficient to deny a claim of entitlement to a permit where the agency is tasked with determining an application's compliance with applicable laws and regulations – even where, upon a showing of compliance, the issuance of the permit is mandatory." *Singer v. City of New York*, __ F. Supp. 3d __, 2019 WL 5540881, at *19 (S.D.N.Y. Sept. 30, 2019) (collecting cases); *see also Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 369 (S.D.N.Y. 2011) ("Courts have held that such permissive language is indicative of discretion and precludes a finding that a plaintiff had a valid property right in the permit at issue."). Thus, because the application process – and review by the building inspector – created a degree of "uncertainty" as to Plaintiff's entitlement in the renewal or issuance of a building permit, his substantive due process claim must fail. *See C.C.S.com USA, Inc. v. Gerhauser*, 518 F. App'x 1, 2 (2d Cir. 2013) (summary order).

Even if Plaintiff were able to establish a clear entitlement to the issuance or renewal of a building permit, he fails to allege facts that would render the Building Department's decision "so egregious, [and] so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) (citation and quotation marks omitted). Other

than stating that the building permit was denied "without explanations,"[17] (Docket No. 54 at ¶ 84), Plaintiff fails to establish that the Town of Greenburgh Building Department's conduct was "egregious" or "conscious shocking." *Leder v. Am. Traffic Solutions, Inc.*, 81 F. Supp. 3d 211, 225 (E.D.N.Y. 2015). In addition, to the extent the claim can be read to allege that the denial was arbitrary because it was done "without explanation[]," this also is insufficient to state a substantive due process violation. *See Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010) ("[S]ubstantive due process does not entitle federal courts to examine every alleged violation of state law, especially ones that, while perhaps vexatious, are more routine than egregious"); *see also Corbley v. Cnty of Suffolk*, 45 F. Supp. 3d 276, 282 (E.D.N.Y. 2014) ("Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of an administrative action") (internal quotations omitted). "Indeed, 'the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts.'" *Tomlins*, 812 F. Supp. 2d at 367 (quoting *Zahra*, 48 F.3d at 680).

Furthermore, to the extent that Plaintiff's ninth claim for relief can be read to allege that Plaintiff had some entitlement or property interest in the Town's enforcement of the building code against his neighbors, (Docket No. 54 ¶¶ 88-99; Docket No. 62 at 16), this claim fails as a matter of law. It is well-established that a plaintiff does not have any "legal entitlement to the enforcement of local zoning…laws." *Macera v. Vill. Bd. of Ilion*, 6:16-CV-668 (LEK/TWD),

---

[17] Plaintiff does not bring a procedural due process claim. (*See generally* Docket No. 54). However, even assuming, *arguendo*, that he was able to establish a property interest in the issuance of a building permit, "New York State has adequate procedures in place for review of decisions of a New York State or local agency, namely Article 78 proceedings." *Spanos*, 2016 WL 3448624, at *3 (collecting cases); *see also C.C.S.com USA, Inc.*, 518 F. App'x at 2 (even if plaintiff had a property interest, it could not demonstrate a denial of due process because plaintiff never pursued an Article 78 in state court "to compel the town's decision").

2019 WL 4805354, at *13 (N.D.N.Y. Sept. 30, 2019) (citing *DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1988)).  Courts in this Circuit have routinely dismissed alleged due process violations stemming from a lack of enforcement of town ordinances or zoning codes. *See, e.g.*, *id.*, at *13–14 ("Plaintiffs have no property interest in the enforcement of town ordinances against [their neighbors], and thus cannot establish a violation of their due process rights due to Village enforcement decisions"); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 704 (S.D.N.Y. 2011) ("In the wake of *Gagliardi*, the lower courts have found that there is no due process right to rigorous enforcement of land-use laws") (collecting cases).

Accordingly, Plaintiff's fourth, eighth, and ninth claims are dismissed with prejudice.

**D.  Tort by Conversion**

Plaintiff's fifth claim is that the Defendants committed tort by conversion because they sought to demolish his home by issuing summonses for several property violations, pursued a trial in state court to adjudicate the summonses, and allegedly pursued a court order that would allow them to demolish Plaintiff's home. (Docket No. 54 ¶¶ 60-65).  Defendants argue that Plaintiff fails to set forth a *prima facie* claim of tort by conversion.

"According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Inc. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)). "This includes a 'denial or violation of the plaintiff's dominion, rights, or possession' over h[is] property." *Id.* (quoting *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487 (1983)).  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs rights." *Cruz v. TD Bank, N.A.*, 855 F.

Supp. 2d 157, 174 (S.D.N.Y. 2012) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8

N.Y.3d 43, 49–50 (2006)). "Conversion, however, applies only to personal property, not real

property." *Jordan v. Tucker, Albin and Assocs., Inc.*, 13-cv-6863 (JMA)(SIL), 2017 WL

2223918, at *9 (E.D.N.Y. May 19, 2017) (collecting cases).

Plaintiff's conversion claim is premised on the notion that the Defendants are seeking to

demolish his development. (Docket No. 54 ¶¶ 62-64). Since this claim is based on an alleged

"taking" of real property, not Plaintiff's personal property, it fails as a matter of law. *See Jordan*,

2017 WL 2223918, at *9. Thus, Plaintiff's fifth claim is dismissed with prejudice.

### E. *Ex Parte* Communication with Justice Brathwaite & Breach of Contract

Plaintiff's sixth and seventh claims for relief are factually intertwined and Defendants'

arguments for their dismissal are also similar. (Docket No. 62 at 14-15). As such, the Court will

address these claims together.

Plaintiff claims that the "Town violated the '*ex parte*' communications rule" by sending

photographs of Plaintiff's construction site to Justice Brathwaite, but not sending those same

pictures to Plaintiff. (Docket No. 54 ¶¶ 19, 73-77). Plaintiff cites to no statute or law under

which this "*ex parte* communications rule" arises. (*Id.*). Plaintiff argues that this *ex parte*

communication resulted in Justice Brathwaite "denying the stipulation" that the parties had

allegedly entered into, and ordering a trial. (*Id.* ¶¶ 76, 79). Plaintiff's breach of contract claim is

premised on the allegation that the Defendants violated that same stipulation by failing to dismiss

summonses as allegedly agreed-upon, and instead by prosecuting the summonses against

Plaintiff. (Docket No. 54 ¶¶ 78-81). Plaintiff also claims that the Town Attorney's *ex parte*

communication with Justice Brathwaite "breached the duty of good faith and fair dealing," (*id.* ¶

79), and caused Justice Brathwaite to "deny[] the stipulation and order a trial date," (*id.* ¶¶ 73-

76).  Thus, it appears that the alleged *ex parte* communication is part of the breach of contract claim, and as such, the Court will evaluate the *ex parte* communication and the breach of contract claim together.  Defendants argue that the *Rooker-Feldman* doctrine bars review of these claims because these issues have already been raised before and decided by the state court. (Docket No. 62 at 13-14).  In support of this argument, Defendants submitted a copy of a state court motion to dismiss[18] filed by Plaintiff, wherein he references Justice Brathwaite's rejection of the state court stipulation as well as the alleged *ex parte* communication between the Town Attorney and Justice Brathwaite. (Docket No. 62-2 at 12-13, 14-15).

"The *Rooker-Feldman* doctrine is named for two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.E.2d 206 (1983)." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018).  "[I]n order for a [federal] court to be deprived of jurisdiction under the *Rooker-Feldman* doctrine, four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 645 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).  In short, the *Rooker-Feldman* doctrine bars federal courts from deciding "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

---

[18] The Court may take judicial notice of this document. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  Furthermore, because Plaintiff references this motion and decision in the SAC, (Docket No. 54 ¶¶ 20-21), it may be properly considered by this Court as "documents that the Plaintiff[] either possessed or knew about that are integral to [his] claims." *Ginx, Inc.*, 720 F. Supp. 2d at 345.

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Court finds that both claims are unreviewable pursuant to the *Rooker-Feldman* doctrine. The SAC makes clear that the harm flowing from the *ex parte* communication was a "den[ial] of the stipulation and [the] order[ing] of a trial." (Docket No. 54 ¶¶ 76, 79-81). Specifically, in Plaintiff's state-court motion to dismiss, he contended that Justice Brathwaite acted arbitrarily when she "disapprove[d] [of] the agreement" because there was "no meeting of the minds." (Docket No. 62-2 at 14-15). Plaintiff explained that Justice Brathwaite made this decision at least in part because of the Town Attorney's *ex parte* communication where he provided photographs of gravel remaining on Plaintiff's property in purported violation of the stipulation. (*Id.*). Here, all four elements of the *Rooker-Feldman* doctrine are met: (1) Plaintiff lost in state court, (Docket No. 62-2 at 14-15); (2) Plaintiff is challenging Justice Brathwaite's rejection of the stipulation, as well as the *ex parte* communication's effect on her decision-making process, (Docket No. 54 ¶¶ 74-77, 79-81); (3) Plaintiff is asking this Court to nullify Justice Brathwaite's finding that the stipulation was unenforceable by finding that *ex parte* communication breached some "duty of good faith and fair dealing," (*id.*); and (4) Justice Brathwaite's decision to reject the stipulation occurred in and around October of 2017, long before[19] the commencement of the instant lawsuit, (*id.* ¶¶ 71, 75-76). Thus, the Court must dismiss Plaintiff's *ex parte* communication and breach of contract claims for lack of subject

---

[19] In his state court motion, Plaintiff also requested that Justice Brathwaite recuse herself based on the alleged *ex parte* communication. (Docket No. 62-2 at 12-13). While this request was not ruled on until June 21, 2018, after Plaintiff commenced the instant action, (Docket No. 1), and ultimately rejected, (Docket No. 62-2 at 2), Plaintiff does not present this claim here. Instead, Plaintiff's alleged violation of the "*ex parte* communications rule" focuses on the Town Attorney's breach of an apparent "duty of good faith and fair dealing," and as such, is an outgrowth of Plaintiff's breach of contract claim, which was decided prior to the commencement of this action. (Docket No. 54 ¶¶ 73-76, 80).

matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. *See Moran v. Town of Cheshire*, No. 3:19-cv-00637 (JAM), 2019 WL 4602855, at *2 (D. Conn. Sept. 23, 2019) (finding plaintiff's request to the federal court that it find the "state court's judgment of foreclosure and the subsequent ejectment…illegitimate" jurisdictionally barred pursuant to the *Rooker-Feldman* doctrine where plaintiff's foreclosure and ejectment had already been litigated in state court).[20]

Accordingly, the Court dismisses Plaintiff's sixth and seventh claims.

## F. Injunctive Relief

Plaintiff seeks two forms of injunctive relief: (1) to enjoin Defendants from continuing state foreclosure proceedings on Plaintiff's property; and (2) to compel Defendants to preliminarily close Plaintiff's driveway to pedestrian traffic. (Docket No. 54 ¶¶ 100-27). The Court, however, previously denied these same requests for injunctive relief by order dated December 21, 2018, (Docket No. 57), and Plaintiff has not added any new facts. In addition, because the Court is granting Defendants' motion to dismiss in its entirety, it follows that any request for injunctive relief would similarly be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in its entirety and Plaintiff's Second Amended Complaint is dismissed. The Second Amended Complaint is dismissed, with prejudice, with the exception of Plaintiff's selective enforcement claim, which is dismissed without prejudice. Plaintiff may file an amended complaint consistent with the

---

[20] The Court notes that on February 14, 2020, Defendants filed a letter enclosing, *inter alia*, Plaintiff's appeal from Justice Brathwaite's decision, wherein he raises the same issues raised in his sixth and seventh claims for relief in the instant action. (Docket Nos. 69 and 69-1). Defendants argue that this further supports their contention that these claims are not reviewable pursuant to *Rooker-Feldman*. (Docket No. 69). The Court agrees with Defendants, although Plaintiff's appeal of these issues does not alter the reasoning barring this Court's review as set forth herein.

parameters of this decision within 21 days of the date of this Opinion.  If Plaintiff fails to abide

by the 21-day deadline, the claims dismissed without prejudice will be dismissed with prejudice.

The Clerk is respectfully requested to mail copies of this Opinion and Order to the *pro se*

Plaintiff.  The Clerk is also respectfully requested to terminate the pending motion (Docket No.

61).

Dated:    February 28, 2020
          White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge