UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL MAROM,

       Plaintiff,

 -against-

TOWN OF GREENBURGH;
PAUL FEINER,

       Defendants.
------------------------------------------------------------X

**OPINION & ORDER**

18 Civ. 7637 (JCM)

   On March 23, 2020, Plaintiff Michael Marom ("Plaintiff"), proceeding *pro* se, filed a Third Amended Complaint ("TAC") alleging that the Defendants the Town of Greenburgh ("Town") and Paul Feiner ("Feiner") (collectively, "Defendants") discriminatorily enforced the building code against his property in violation of the Equal Protection Clause. (Docket No. 72). On June 8, 2020, Defendants moved to dismiss the TAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 79).  Plaintiff filed Opposition to Defendants' Motion to Dismiss on July 9, 2020, (Docket No. 81), and Defendants filed a Reply Memorandum of Law on July 16, 2020, (Docket No. 84).  For the following reasons, Defendants' Motion to Dismiss is granted in its entirety.

**I. BACKGROUND**

   The Court accepts as true the factual allegations in the TAC for the purposes of resolving the instant motion. *See Montgomery v. Holland*, 408 F. Supp. 3d 353, 361 (S.D.N.Y. Sept. 30, 2019) ("In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor") (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)).

**A. Factual Allegations**

Plaintiff aptly describes this lawsuit as "the most recent chapter in a long and bitter chronology of irrational activities." (Docket No. 72 ¶ 2). After purchasing the vacant lot next to Mark Gordon and Audrey Pierot ("the Gordons"), Plaintiff, a self-described "professional builder," began construction on a "dream home for his family." (*Id.* ¶¶ 2-3, 9). The home is still under construction and remains two-thirds completed. (*Id.* ¶ 9). Plaintiff explains that a driveway had been "cut through" the vacant property he purchased to allow the Gordons access to the street. (*Id.* ¶ 3). Shortly after commencing construction on his home, Plaintiff claims that the Gordons sought adverse possession over the driveway. (*Id.*). Despite settling this litigation, the parties' contentious relationship continued. (*Id.*).

Plaintiff alleges that Timothy Lewis, the Town Attorney, called him on November 26, 2016 and told him that the Gordons had "enlisted the political power of the Town's Supervisor, Paul Finer [sic]" to initiate proceedings to demolish Plaintiff's home because "it was not built to his 'satisfaction.'" (Docket No. 72 ¶ 4). Plaintiff further contends that on or about February 2, 2017 the Town issued "more than half a dozen violations" against his property at Defendant Feiner's request. (*Id.* ¶¶ 6, 10, 16). Plaintiff claims that the Town issued these violations to effectuate its "plan of demolishing [Plaintiff's] house," an intention Plaintiff alleges Defendant Feiner expressed at a Town board meeting on April 18, 2017 ("April 18, 2017 Town Board Meeting"). (*Id.* ¶¶ 7, 10). Although Plaintiff acknowledges that Defendant Feiner did not personally issue the violations, he claims Feiner directed the Town Building Inspector, Steve Fraietta ("Inspector Fraietta") to do so. (*Id.* ¶ 28). Plaintiff claims that Inspector Fraietta subsequently instructed Building Inspector Robert Dam ("Inspector Dam")—a field inspector for the Town—to "execute the order." (*Id.*).

2

Plaintiff argues that the violations improperly cited his property for "storing legitimate building materials and construction equipment" and "were issued while the site had a valid building permit." (Docket No. 72 ¶ 10).  Plaintiff further explains that he was cited for failing to complete a certain construction phase, and for violations of the International Property Maintenance Code ("IPMC"), specifically: (1) IPMC Section 301.3 (vacant structures); (2) IPMC Section 304.6 (exterior walls); (3) TWN 410-4A (accumulation of debris); and (4) ZON 285-36F (boats/trailers). (*Id.* ¶ 6).  Plaintiff believes that the Town "acted as a proxy" for the Gordons in citing his property, and that Defendant Feiner ordered the citations in an effort to "appease [a] Town[] resident" who "wants to see [Plaintiff's] house going down." (*Id.* ¶¶ 5, 7-8, 25-28).  Plaintiff asserts that two other property developers, whose developments were located at 300 and 340 South Healy Avenue, were not issued property violations despite also having building materials and debris on their properties. (*Id.* ¶ 17).  Plaintiff claims that the 300 South Healy Avenue property was an existing structure that was being renovated, whereas a new home was being constructed at 340 South Healy Avenue. (*Id.*).  Plaintiff also contends that the Gordons did not receive any violations despite having "full-size[d] cinder blocks piled" on their property. (*Id.* ¶ 18).

The Gordons attended the April 18, 2017 Town Board Meeting. (Docket No. 72 ¶¶ 6-7, 25, 27-28).  During this meeting, Plaintiff maintains that Defendant Feiner discussed the violations, questioned whether the Town could "put[] pressure on the court to expedite the trial," and revealed his true motivation for issuing the violations, namely, a desire to appease the Gordons and "'knock the house down' financially." (*Id.* ¶¶ 27-29).  Plaintiff also states that the Town discussed "the best legal strategy" to "knock down" Plaintiff's home during the April 18, 2017 Town Board Meeting, which Plaintiff alleges is further proof of Defendants' improper motivation for issuing the violations. (*Id.* ¶¶ 25-26).  Plaintiff further alleges that Defendant

3

Feiner acted with personal animus towards him due to a prior incident between them. (*Id.* ¶ 21). Specifically, Plaintiff explains that the Gordons' garbage pails were placed near his property and were routinely flipped over by animals, spilling garbage onto Plaintiff's property. (*Id.*). Plaintiff sought intervention from the Town to no avail. (*Id.*). The Town's inaction led Plaintiff to gather the garbage, which consisted of empty dog food cans and bottles, and mail it to Defendant Feiner with a complaint letter. (*Id.*). As of the drafting of the TAC, Plaintiff had not received a response from Defendant Feiner. (*Id.*).

In and around August 2017, Plaintiff reached an agreement with the Town to remedy the violations, which was memorialized in a "stipulation." (Docket No. 72 ¶ 11). Plaintiff maintains that he complied with the stipulation, but the Town disagreed, and brought the dispute before Justice Dolores Brathwaite of the Town of Greenburgh Town Court. (*Id.* ¶¶ 11-12). On or about October 4, 2017, Plaintiff and the Town Attorney had a conference before Justice Brathwaite to discuss the status of the stipulation. (*Id.* ¶ 12). Following the conference, Justice Brathwaite concluded that Plaintiff had not complied with the stipulation and ordered a trial to adjudicate the summonses. (*Id.*). Justice Brathwaite held a bench trial on November 6, 2017, January 10, 2018, March 12, 2018, and March 23, 2018. (Docket No. 64 at 2-3).[1] On March 8, 2019, Justice Brathwaite issued a decision, finding Plaintiff guilty of violating: (1) Section 301.3 of the IPMC; (2) Section 285-36F of the Town of Greenburgh Zoning Regulation; (3) Section 410-4A of the Town Ordinance; and (4) Section 285-47A of the Zoning Regulations. (*Id.* at 10). Plaintiff appealed this decision on the same day it was issued and perfected his appeal on December 20, 2019. (Docket No. 72 ¶ 13).

---

[1] The Court may take judicial notice of this document since it was a decision in Plaintiff's New York State Court case. *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (taking judicial notice of "all documents in the public record, including the decisions of the [Village Zoning Board of Appeals], the decisions of the Supreme Court in the Article 78 proceedings, and the provisions of the Village zoning code…") (collecting cases).

**B. Procedural History**

For a complete recitation of the procedural history in the instant action, the Court refers to its February 28, 2020 Opinion and Order, (Docket No. 70 at 5-6), wherein the Court granted Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), (Docket No. 61), in its entirety, dismissing all claims with prejudice, with the exception of Plaintiff's selective enforcement claim, which was dismissed without prejudice. (Docket No. 70). Plaintiff moved for reconsideration of the Court's February 28, 2020 decision, (Docket No. 71), which was denied on May 29, 2020, (Docket No. 78). On March 23, 2020, Plaintiff filed his TAC. (Docket No. 72). On June 8, 2020, Defendants filed the instant motion to dismiss the TAC. (Docket Nos. 79-80). Plaintiff opposed the motion on July 9, 2020, (Docket No. 81), and Defendants' filed a Reply Memorandum of Law on July 16, 2020, (Docket No. 84).

## II.  MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss must accept all of the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss . . . we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.") (citations and internal quotation marks omitted). The facts alleged must be more than legal conclusions. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration, citation and internal quotation marks omitted)).

The court must also determine whether the factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely 'alleged' but not 'show[n] that the pleader is entitled to relief.'" *9 Recordings Ltd. v. Sony Music Entm't*, 165 F. Supp. 3d 156, 160 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks omitted)). If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

*Pro se* complaints should be liberally construed and "held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *James v. Correct Care Solutions*, No. 13-cv-0019 (NSR), 2013 WL 5730176, at *2 (S.D.N.Y. Oct. 21, 2013)[2] (citation and internal quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hill v.*

---

[2] If Plaintiff does not have access to cases cited herein that are reported only on Westlaw, then he may request copies from Defendants' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of cases and other authorities that are unpublished or reported exclusively on computerized databases that are cited in a decision of the Court and were not previously cited by any party").

*Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (noting that *pro se* complaints require "special solicitude" and the court should interpret the complaint to raise the strongest claims). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *James*, 2013 WL 5730176, at *2 (citations and internal quotation marks omitted).

### III. DISCUSSION

Plaintiff seeks relief from the Town's alleged selective enforcement of the building code against his property in violation of the Equal Protection Clause. (Docket No. 72 ¶¶ 14-33). Defendants argue that Plaintiff's selective enforcement claim must be dismissed because Plaintiff fails to: (1) plead the existence of adequate comparators; and (2) plausibly plead that the citations against his property lacked any rational basis. (Docket No. 80 at 4-10).

To state an equal protection claim based on the theory of selective enforcement, a plaintiff must demonstrate: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995)). A plaintiff cannot state a selective enforcement claim simply by alleging disparate treatment. *See id.* "Instead, he must prove that the disparate treatment was *caused by* the impermissible motivation." *Id.* (emphasis in original) (quoting *Crowley v. Courville*, 76 F.3d 47, 53 (2d Cir. 1996)). In addition "whether two comparators 'are similarly situated is [generally] a factual issue that should be submitted to the jury.'" *LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885 (KMK), 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494,

499 n.2 (2d Cir. 2001)).  While "[t]here is no precise formula to determine whether an individual is similarly situated to comparators," *Hu*, 927 F.3d at 97 (internal quotations omitted), at the motion to dismiss stage, a plaintiff must still allege facts that plausibly demonstrate that he is similarly situated to the comparators, *see LTTR Home Care*, 2019 WL 4274375, at *12 (collecting cases).  A plaintiff may also state an equal protection claim pursuant to a class-of-one theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To state a class-of-one claim, a plaintiff must plausibly allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*.  To plausibly plead a class-of-one claim, the degree of similarity between the plaintiff and purported comparators must be "extremely high." *Hu*, 927 F.3d at 93 (quotations omitted).

The Court dismissed the SAC based, in part, on Plaintiff's failure to adequately plead proper comparators for the purposes of either his class-of-one or selective enforcement claims. (Docket No. 70 at 14-16).  While the Court dismissed Plaintiff's class-of-one claim with prejudice, the Court permitted Plaintiff to replead his selective enforcement claim if he had a "good-faith basis to add additional facts" to demonstrate the existence of proper comparators. (*Id.* at 21, 30-31).  Plaintiff seeks to compare himself to the same individuals as he did in the SAC: (1) two building developers who were developing properties on the same street as his construction; and (2) Plaintiff's neighbors, the Gordons. (*Compare* Docket No. 72 ¶¶ 17-19, 22-23 *with* Docket No. 54 ¶¶ 43-44).  Although the TAC includes some additional details regarding these three purported comparators, Plaintiff still fails to plausibly plead that they are sufficiently similar to serve as comparators for the purposes of a selective enforcement claim.

First, Plaintiff claims the Gordons are an appropriate comparator because they had "full size[d] cinder blocks piled" on their property, which he again characterizes as "building debris." (*Compare* Docket No. 72 ¶ 18 *with* Docket No. 54 ¶ 44).  This is virtually identical to the

8

allegations in the SAC, except Plaintiff claims in the TAC that the Gordons storage of the cinder blocks violated Town Code Section 410-4A. (*Id.*).  However, this additional fact does not cure the primary deficiency identified by the Court in its February 28, 2020 Decision. (Docket No. 70 at 15-16).  The Court did not reject the Gordons as comparators because Plaintiff failed to plead the specific section of the Town Code that he believed the pile of cinder blocks violated. (*Id.*).  Rather, the Court's decision was premised on Plaintiff's strained attempt to draw a similarity where none existed. (*Id.*).

Fundamentally, cinder blocks piled on a property is not comparable to the multitude of building code violations that Plaintiff was cited for and ultimately found guilty of after a full trial. (Docket No. 72 ¶ 18; *see also* Docket No. 64 at 10).  Here, a "prudent person, looking objectively at the two incidents, would [not] think them roughly equivalent." *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001).  Thus, Plaintiff again fails to demonstrate that the Gordons were sufficiently similar to serve as comparators for his selective enforcement claim. *See, e.g.*, *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135–36 (E.D.N.Y. 2013) (finding plaintiff not similarly situated to other comparators in a selective enforcement claim where plaintiff was cited for maintaining a "barricade[]" deemed to be a nuisance, but the comparators were not cited for having "broken pavement, large potholes, [and] ruts and ridges.").[3]

---

[3] Plaintiff also claims that he "complained to the Town's officials in writing to the existence of … full-size cinder blocks" on the Gordons' property, and that his complaints went unanswered. (Docket No. 72 ¶ 18).  However, assuming, *arguendo*, that the Town was on notice of the Gordons' alleged violations, and did not issue summonses, this alone would be insufficient to establish a selective enforcement claim. *See Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 158 (S.D.N.Y. 2002) ("Failure to proceed *against others* who are comparably situated is not by itself a basis for finding a denial of equal protection") (emphasis in original) (quotations omitted); *see also Gottlieb v. Vill. of Irvington*, 69 F. Supp. 2d 553, 559 (S.D.N.Y. 1999) (rejecting plaintiffs' selective enforcement claim premised on the Village's alleged enforcement of the building code against their nonconforming driveway location where, even assuming "plaintiffs could prove the Village kn[e]w at the time the [Neighbors] were constructing their driveway that it was nonconforming," this alone would be insufficient to establish "a basis for finding a denial of equal protection.").

Second, Plaintiff claims that two developers on South Healy Avenue did not receive violations "despite having cement mixers, concrete forms, piles of sand, wooden planks and other building materials on the properties developed by them." (Docket No. 72 ¶ 17).  Plaintiff asserts that the developer working on 300 S. Healy Avenue was renovating an existing dwelling, while the development at 340 S. Healy Avenue was a new construction "similar in size to [P]laintiff's construction site plot." (*Id.*).  Although Plaintiff does not provide many new details concerning the "accumulation of debris" on the two properties, he insists that such details "do[] not matter" because the building materials he was storing were intended for use on a "future phase of [his] construction." (*Id.* ¶ 17).  Plaintiff also notes that whereas construction was "active" on the other two developments, his construction "was halted," and even acknowledges that "[t]he houses, nor the buildings can be compared." (*id.* ¶ 22).  Thus, by Plaintiff's own admission, the two developments are dissimilar from Plaintiff's property based on their different stages of construction.  Justice Brathwaite drew on this distinction in her decision finding Plaintiff guilty of, *inter alia*, having an accumulation of debris on his property. (Docket No. 64 at 8-9).  Specifically, she noted that "no work was being done on [Plaintiff's] property to support the contention that the materials were being used for construction," which she characterized as "the issue" that transformed the materials on his property into debris. (*Id.*).

This distinction is important.  The two developers are not proper comparators because Plaintiff, by his own admission, was not actually using the "debris" on his property for any active construction. *See, e.g.*, *Toussie v. Town Bd. of East Hampton*, 874 F. Supp. 2d 135, 143 (E.D.N.Y. 2012) (finding class-of-one and selective enforcement claims deficient where the two parcels at issue were substantially different "given their markedly distinct developmental histories"); *Farmington-Girard, LLC v. Planning & Zoning Comm'n of City of Hartford*, No. 3:17-cv-1915 (MPS), 2019 WL 935500, at *15 (D. Conn. Feb. 26, 2019) (dismissing equal

protection claim where plaintiff failed to allege proper comparators, and specifically rejecting plaintiff's attempt to compare his property—an undeveloped lot—with an already-existing fast food restaurant when plaintiff applied for a special permit to develop a fast food restaurant with a drive-through window).

Plaintiff attempts to further construct a comparison by arguing that his other violations are immaterial, and the Court should compare "ONLY … the summonses of accumulating debris and storing trailer/cement mixers." (Docket No. 72 ¶ 22) (emphasis in original).  However, the Court cannot simply ignore these additional violations.  Plaintiff was found guilty of several property violations after trial: (1) leaving makeshift scaffolding on his building with signs of deterioration; (2) leaving exterior walls, eaves, gutters not completed for years that cause blighting; (3) leaving piles of gravel on the driveway causing blighting; (4) leaving exterior walls and windows unfinished; (5) having a commercial trailer and cement mixer on his property within full-view; (6) and finally that his property remained in a "state of disrepair" for over two years despite being afforded the opportunity to cure the violations. (Docket No. 64 at 6-10).  Not only do these additional issues further distinguish Plaintiff's property from the other two developers' properties, they also compound the distinction between Plaintiff's "accumulation of debris" and the building materials maintained by the developers. *See, e.g.*, *Joglo Realties, Inc. v. Seggos*, No. 16-CV-1666 (ARR)(CLP), 2016 WL 4491409, at *12 (E.D.N.Y. Aug. 24, 2016) ("Thus, even if we assume that plaintiffs and their comparators did commit a few of the same violations …, they are still not viable comparators, as plaintiffs have committed vastly more violations. It is not unreasonable to think that the [Town] would initiate a proceeding against a property owner who had committed twenty-six violations, but not against another who had committed only a handful of the same violations.").

Plaintiff argues that he is entitled to discovery "to find out if the other developers had other violations as well." (Docket No. 72 ¶ 22). This argument fails. Plaintiff is only entitled to discovery if he sets forth a cognizable cause of action. *See Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim."). Accordingly, because Plaintiff has not pled the existence of proper comparators, his selective enforcement claim is deficient as a matter of law and must be dismissed.[4]

Assuming, *arguendo*, that Plaintiff was able to establish that he was similarly situated to the two developers or the Gordons, he again fails to plausibly plead that the Defendants' actions were motivated by any impermissible considerations, malice, or ill will. As a threshold matter, although Plaintiff states that Defendants were motivated at least, in part, to punish Plaintiff for "the exercise of his constitutional rights," Plaintiff does not assert sufficient detail to plausibly plead any discriminatory motive for the Town's actions.[5] (*Id.* ¶ 30).

Plaintiff argues, just as he did in the SAC, that Defendants were motivated by a desire to appease the Gordons and to rid the town of his property. (*Compare* Docket No. 54 ¶¶ 48-49, 50, 53 *with* Docket No. 72 ¶¶ 6-8, 25-30). Thus, his selective enforcement claim is again predicated

---

[4] Although the Court dismissed Plaintiff's class-of-one claim with prejudice, (Docket No. 70 at 21-22, 30-31), in opposition, Plaintiff asserts that he "brought again the 'class-of-one' claim … in order to preserve the claim for the Court of Appeals (if needed)," (Docket No. 81 at 1). The Court notes, however, that the degree of similarity necessary to plead a class-of-one claim is higher than that required for a selective enforcement claim. *See Hu*, 927 F.3d at 92–93 (comparing the two standards). Thus, because Plaintiff fails to plead proper comparators for the purposes of his selective enforcement claim, any class-of-one claim would necessarily fail.

[5] Even if Plaintiff provided more facts to support his Fifth Amendment claim, it would nevertheless fail because the Fifth Amendment governs the conduct of the federal government and federal employees, not state or local actors. *See McPherson v. Town of Southampton*, No. 07-CV-3497 (DRH)(AKT), 2013 WL 6058202, at *16 (E.D.N.Y. Nov. 14, 2013) (collecting cases).

on "ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights" and, consequently, is "lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quotations omitted).  Plaintiff asserts that the Gordons enlisted Feiner to "demolish" Plaintiff's home by first issuing the property violations, and then "pressur[ing] … the Justice court" to expedite a trial. (Docket No. 72 ¶¶ 6-7, 25-27).  Plaintiff maintains that the Defendants issued summonses as part of a "plan of using their criminal court to impose massive fines on [his home] to 'knock the house down' financially [to] satisfy [the] Gordons['] demands." (*Id.* ¶¶ 24, 27, 29).  While Plaintiff repeatedly references the Town's plan to "demolish" his home, he does not plausibly claim that the Town actually sought such an order. (*Id.* ¶¶ 4-5, 7, 12-13, 20, 25-27, 30-33).  Instead, the factual allegations establish that the Town cited Plaintiff's construction for several property violations, pursued these violations in court, and eventually resolved them through a trial. (*See generally id.*).

Plaintiff further argues that Defendants' actions were based on a desire to appease a constituent—the Gordons. (Docket No. 72 ¶¶ 5-6).  However, favorable treatment of another constituent "itself does not demonstrate malice against [Plaintiff], but rather merely an intent to help [his neighbors]." *Missere*, 826 F. Supp. 2d at 565; *see also Town and Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, 17-CV-8586 (CS), 2019 WL 1368560, at *22 (S.D.N.Y. Mar. 26, 2019) (although the town attorney "favored his friend's project over [plaintiff's], [plaintiff] ha[s] pointed to no case where a public official's preference of that sort amounted to malice"); *Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *7 (S.D.N.Y. Mar. 27, 2015) (plaintiffs' allegation that they were treated less favorably because "other homeowners were all longtime Village residents" was not sufficient to establish an impermissible consideration for a selective enforcement claim); *see also Payne v. Huntington Union Free Sch.*

13

*Dist.*, 219 F. Supp. 2d 273, 283 (E.D.N.Y. 2002) (plaintiff's allegation that she was fired because of her spouse's position, while constituting "personal animus … is not the sort of personal animus proscribed by the Equal Protection Clause").

Although the TAC is replete with allegations concerning issues Defendant Feiner had with Plaintiff's property, Plaintiff still fails to plausibly plead that the property violations were motivated by any personal animus Feiner had with Plaintiff. (Docket No. 72 ¶¶ 6-7, 25-28, 30-31).  It is well established, however, that "[e]nmity directed toward a business property use may not form the basis for a constitutional claim because equal protection rights vest in individuals rather than business activities." *Harlen Assocs.*, 273 F.3d at 503.  Thus, this claim fails as a matter of law. *See, e.g.*, *Avraham v. Lakeshore Yacht & Country Club, Inc.*, 5:15-CV-1297, 2016 WL 6585589, at *14 (N.D.N.Y. Nov. 7, 2016) (dismissing selective enforcement and class-of-one claims where plaintiff merely alleged that the Town's enactment of a local law was arbitrarily enforced against him in an "effort to prevent him from developing his real property and to reduce the value of the property to very little worth"); *Witt*, 2015 WL 1427206, at *8 (rejecting plaintiffs' claim of malice or bad-faith intent to injure where they alleged that the town building inspector was "trying to force them to undertake [a] more expensive and time consuming option … for his own self-serving reasons, i.e. to save his job" because the allegations did not suggest "ill will—on the part of any party—directed toward Plaintiffs"); *Laidlaw Energy and Envtl., Inc. v. Town of Ellicottville, N.Y.*, No. 08-CV-32-S, 2011 WL 4954881, at *11 (W.D.N.Y. Oct. 18, 2011) (although the town's acts may have been "compatible with acts intended to injure [plaintiff]," the court found that they were not malicious because they were not coupled with allegations of personal animus and thus could not serve as the predicate for a selective enforcement claim); *Toussie v. Town Bd. of the Town of East Hampton*, No. CIVA 08-1922 DRH WDW, 2010 WL 597469, at *10 (E.D.N.Y. Feb. 17, 2010) (finding no

malice or ill-will where plaintiff claimed that the town discriminatorily "upzoned" their property because he declined to sell to the town because: (1) there were no allegations of personal conflicts between plaintiff and the town board; (2) the upzoning was motivated by "governmental objectives;" and (3) the allegations, "at best, [were] merely consistent with [the Town's] liability [and] stop[ed] short of the line between possibility and plausibility of entitlement to relief") (quotations omitted).

The TAC does include new allegations concerning the genesis of an alleged "personal conflict" between Plaintiff and Defendant Feiner. (Docket No. 72 ¶ 21). Plaintiff explains that:

> [d]ue to the bisected driveway, the neighbor (Gordon-Pierot) placed their garbage pals [sic] at the street entrance of the driveway which is in front of the plaintiff's entrance door. At night, animals use[d] to flip the garbage pal [sic] that would spill … the contents into plaintiff's property. Several requests from the town sanitation department and a personal plea to the supervisor to have the neighbor place their garbage in fron[t] of their house were not answered. In response, by summer 2016, after the neighbor complain[ed] about 'garbage' on [Plaintiff's] property, on two occasions, [Plaintiff] gathered the spilled garbage in the form of empty dog food cans, empty bottles and such and mailed it to Supervisor Feiner with a complaint letter, but no response nor corrective action was ever done to remedy the problem.

(*Id.*). Plaintiff admits that there was no "response nor corrective action" taken as a result of his behavior. (Docket No. 72 ¶ 21). Importantly, other than describing this as a "personal conflict," Plaintiff fails to plausibly plead that Defendant Feiner's actions were motivated by this incident or that Feiner maintained some degree of animus stemming from Plaintiff sending him garbage. (*Id.* ¶¶ 6-8, 25-30).

Moreover, Plaintiff acknowledges that Inspector Dam—the individual who issued the summonses—did not harbor any ill will towards him. (Docket No. 72 ¶ 28). Furthermore, despite characterizing the Town and Feiner's motivations as malicious, Plaintiff's own exhibit

15

casts doubt on this assertion. Attached to the TAC is a transcript[6] of the October 4, 2017 conference before Justice Brathwaite, where the Town Attorney, Timothy Lewis, explicitly states that his goal "is not to get additional fines against [Plaintiff]," but rather for Plaintiff or someone else to complete the construction on the property. (Ex. 1, Docket No. 72 at 36-37). Plaintiff also admits during this conference that he was attempting to cure some of the violations cited by the Town, lending support to the notion that the summonses were motivated by legitimate interests. (*Id.* at 23-25). It bears noting that "[t]he branch of equal protection law that protects individuals from unequal treatment motivated by 'malicious or bad faith intent to injure' provides protection from adverse governmental action that is not motivated by 'legitimate governmental objectives.'" *Bizzarro*, 394 F.3d at 87 (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995)). Both the TAC and attached transcript demonstrate that the Town's decision to pursue the property violations was motivated by a displeasure with Plaintiff's property, not Plaintiff himself. (Docket No. 72 ¶¶ 4-6, 27, 30-31; Ex. 1, Docket No. 72 at 18-24, 36-37). The Town's desire to pursue this "legitimate governmental objective," without more, is insufficient to establish an improper motivation for the purposes of a selective enforcement claim. *See Bizzarro*, 394 F.3d at 87 ("If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to 'get [someone] for reasons wholly unrelated to any legitimate state objective'") (quoting *Esmail*, 53 F.3d at 180)).

---

[6] The Court may consider this document because it is integral to Plaintiff's claims and referenced in the TAC. *See Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 345 (S.D.N.Y. 2010) (the court is permitted to consider "the contents of documents that the Plaintiff[] either possessed or knew about that are integral to [his] claims.").

Accordingly, because Plaintiff has still failed to plead the existence of appropriate comparators or that the Defendants acted with any impermissible purpose, malice, or ill will, Plaintiff's selective enforcement claim remains deficient as a matter of law and must be dismissed.[7]

Furthermore, since this was Plaintiff's third attempt to amend his complaint, (Docket Nos. 33, 54, 72), and he still fails to plausibly plead any claims, or correct any of the errors cited by the Court in its February 28, 2020 Opinion, the Court finds that "granting Plaintiff 'leave to amend would be futile because [P]laintiff has already had [three] bites at the apple and they have proven fruitless.'" *Dash v. Doe*, 19 Civ. 414 (GBD)(JLC), 2020 WL 3057133, at *2 n.4 (S.D.N.Y. June 9, 2020) (quoting *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005)); *see also Boykin v. Moreno*, No. 17-CV-6869 (KMK), 2020 WL 882195, at *8 (S.D.N.Y. Feb. 24, 2020) (dismissing *pro se* fourth amended complaint with prejudice where plaintiff "fixed virtually none of the deficiencies highlighted by the Court in its [] Opinion") (collecting cases).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in its entirety and Plaintiff's Third Amended Complaint is dismissed with prejudice. The Clerk is respectfully requested to terminate the pending motion (Docket No. 79) and close the case.

Dated:   August 19, 2020
           White Plains, New York

**SO ORDERED:**

*[signature]*
JUDITH C. McCARTHY
United States Magistrate Judge

---

[7] Because Plaintiff fails to state a claim for selective enforcement, the Court declines to address whether Defendant Feiner is entitled to absolute or qualified immunity. *See Witt*, 2015 WL 1427206, at *12 n.34.